- Maven and Robinson submitted false certifications that represented that the parts complied with the Buy American Act, as required per DFARS 252.225-7000, when they did not, and failed to disclose the true origins of the components and parts used in the manufacture of parts;

- Maven and Robinson represented that the parts met the "quality specified and conform in all respects with the contract requirements, including specifications, drawings, preservation, packing, marking requirements, and physical item identification (part number)," as required per FAR 52.246-15(a), when they did not;

- Maven and Robinson represented that the parts were manufactured in compliance with all applicable statutory, regulatory, and contractual requirements in the Certificate of Conformance in the WAWF RR (Material Inspection and Receiving Report) as is required to be furnished to the Government per DFARS 252.246-7000(a), when they were not; and

- Maven and Robinson represented that the parts were manufactured in compliance with all applicable statutory, regulatory, and contractual requirements in the Certificate of Conformance that were attached to the claims for payment that were submitted to the Government under Maven's supply contracts, when they were not.

152.    Defendants knowingly made, used, or caused to be made or used, these false records or statements in order to conceal, avoid, or decrease an obligation to pay money to the Government. Specifically, Defendants knowingly concealed that they had in their possession Government overpayments to which they were not entitled to under the terms and conditions of the contract and concealed their obligation to pay back the Government for the overpayments the Government made to Defendants under Maven's supply contracts with the DoD.

153.    Federal regulations provide that:

(a)    Contract debts are amounts that—

    (1)    Have been paid to a contractor to which the contractor is not currently entitled under the terms and conditions of the contract; or

    (2)    Are otherwise due from the contractor under the terms and conditions of the contract.

(b)    Contract debts include, but are not limited to, the following:

\*\*\*

(9)     Damages or excess costs related to defaults in performance.

(10)    Breach of contract obligations concerning progress payments, performance-based payments, advance payments, commercial item financing, or Government-furnished property.

(11)    Government expense of correcting defects.

(12)    Overpayments related to errors in quantity or billing or deficiencies in quality.

\*\*\*

48 C.F.R. § 32.601.

154.    Defendants overcharged the Government by charging the full price for goods that materially failed contract specifications, such that spare parts were at risk of not even fitting into the machinery they were designed to repair. Under contract, Maven had a duty to repay those overcharges.

155.    By virtue of the Defendants' failure to disclose their obligation to repay the Government, the United States has suffered substantial monetary damages.

**4.      Conspiracy (31 U.S.C. § 3729(a)(1)(C))**

156.    Defendants—Maven, Robinson, Kavita Dawson, Faymer and other unknown Turkish manufacturers and suppliers—have conspired in (1) knowingly presenting false and/or fraudulent claims for payment or approval to the United States Government; (2) knowingly making, using, or causing to be made or used, false records or statements material to false and/or fraudulent claims; and (3) concealing Defendants' obligation to repay the Government this overage. The United States has suffered substantial damages as a result of the perpetration of Defendants' conspiracies with Faymer and other Turkish suppliers.

157.    During the bidding process and before Maven had been awarded a Government supply contract, Defendants agreed and had in place a scheme to import Turkish parts to fulfill DoD supply contracts. Defendants agreed that Robinson would deliver these Turkish parts to the Government for acceptance, even though Defendants knew that the parts had not been property tested. Defendants also agreed to deliver parts to the Government that did not meet the contractual specifications because the parts had dimensional problems, material problems, or other quality defects. Defendants further agreed to furnish "sham" certifications created by Faymer and other unknown Turkish suppliers to the Government so that the Government would accept the products without testing. Defendants agreed to utilize Robinson as a "sham" manufacturer-subcontractor so that Defendants could falsely represent to the Government that the Turkish parts were compliant with the Buy American Act and in order to disguise the true origin of the parts. Defendants agreed to submit false claims, and create or use false statements and false records to the Government in order to obtain Government acceptance of the parts at issue and obtain payments from the Government under Maven's DoD supply contracts, as well as to conceal Defendants' possession of wrongfully gained government funds.

158.    Defendants knowingly conspired with Turkish suppliers and dealers, such as Faymer, to defraud the Government as part of this scheme. Faymer and other Turkish entities entered into an agreement with Maven and Robinson to send Turkish parts to the U.S. of substandard quality and sent the parts accompanied with certifications that contained false representations regarding the specifications and other characteristics about the parts.

## IX.   CAUSES OF ACTION

### Count I: Presentation of False Claims under 31 U.S.C. § 3729(a)(1)(A)

159.   Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

160.   From 1998 to the present, Dawson and Maven knowingly presented or caused to be presented false and/or fraudulent claims for payment or approval to the DoD.

161.   From approximately 2009 to 2014, Robinson knowingly presented or caused to be presented false and/or fraudulent claims for payment or approval to the DoD.

162.   The claims submitted to the Government were false or fraudulent because (1) Robinson did not have the necessary measuring and testing equipment that was required to be properly calibrated, as required per DLAD 52.246-9003; (2) Robinson did not subject the parts to testing to ensure that the parts met the contractual specifications, as required per DLAD 52.246-9004; (3) Robinson did not furnish to the Government DCMA Inspectors supplies that had been inspected in accordance with contractual requirement as required per FAR 52.246-2; (4) Maven and Robinson did not furnish the parts for inspection and acceptance to the Government at the source or origin as required under contract, as required per DLAD 46.503 (which defines this as the place of manufacture), because the actual place of manufacture was in Turkey, not at Robinson's facility; (5) Maven and Robinson did not supply to the Government parts that complied with the Buy American Act, as required per DFARS 252.225-7000. Defendants failed to disclose the true origins of the components and parts used in the manufacture of the parts; and (6) Maven and Robinson did not supply to the Government parts that complied with the "quality specified" and "conform[ed] in all respects with the contract requirements, including

specifications, drawings, preservation, packing, marking requirements, and physical item identification (part number)," as required per FAR 52.246-15(a).

163.   Maven, Kavita Dawson, and Robinson knew at all times that the claims were false. Maven and Kavita Dawson directed Robinson to import Turkish parts, to furnish the parts to the Government for inspection and acceptance, and to tender sham false certifications to the inspectors. Robinson knowingly participated in this scheme with Robinson, as evidence by its conduct and Maven's continued interference with Robinson's quality control managers to get the parts accepted by the Government.

164.   These claims were materially false and fraudulent in that they had the potential to influence the government's decision to pay the claims and in fact did influence that decision. The United States only pays for parts that meet the material statutory, regulatory, and contractual requirements. The FAR, DFARS, and DLAD regulations and clauses support the materiality of these requirements, as they demonstrate they went to the very essence of the bargain. Had the Government known that Defendants did not comply with applicable statutes, regulations, and clauses, which resulted in the submission of ineligible claims for reimbursement, the Government would not have paid the claims. In fact, when DCMA detected repeated quality problems with Robinson's parts, it suspended Robinson as a government subcontractor.

165.   Defendants' presentment, or causation of presentment, of false and/or fraudulent claims to the United States was a foreseeable factor in the United States' loss and a consequence of the scheme. By virtue of Defendants' actions, the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**Count II: Making or Using False Records or Statements Material to False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(B))**

166.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

167.    From 1998 to the present, the Maven knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.

168.    From approximately 2009 to 2014, Robinson made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.

169.    Maven, Dawson, and Robison's false statements and false records, as described above, were included or encapsulated in, among other verbal statements or documents, the following: the Material Inspection and Receiving Report, Buy American Act Certificate, and Certificates of Conformance. Robinson, at Maven's direction, used false statement and false records, including sham Turkey certifications, during the inspection process to obtain Government acceptance of its non-conforming parts.

170.    Defendants' creation or use of false records or false statements, and/or its causation to the creation or use of false records or false were material to false claims because they had the potential to influence the government's decision to pay the claims and in fact did influence that decision. The United States only pays for parts that meet the material statutory, regulatory, and contractual requirements. The FAR, DFARS, and DLAD regulations and clauses support the materiality of these requirements, as it demonstrates they went to the very essence of the bargain. Had the Government known that Defendants did not comply with applicable statutes, regulations, and clauses, which resulted in the submission of ineligible claims for reimbursement, the Government would not have paid the claims. In fact, when DCMA detected

repeated quality problems with Robinson's parts, it suspended Robinson as a government subcontractor.

171.    Defendants' creation or use of false records or false statements, and/or its causation to the creation or use of false records or false was a foreseeable factor in the United States' loss and a consequence of the scheme. By virtue of Defendants' actions, the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**Count III: Reverse False Claims under 31 U.S.C. § 3729(a)(1)(G)**

172.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

173.    Throughout this scheme, Defendants have knowingly made, used, or caused to be made or used, false records or statements to conceal, avoid, or decrease and obligation to pay money to the Government. These false statements or records include but are not limited to false representations, false records, and false certifications made or caused to be made by Defendants to the Government in requesting payment from the Government for parts that did not meet statutory, regulatory, or contractual requirements.

174.    Maven, Dawson, and Robinson concealed to the Government that the parts that were furnished for inspection and acceptance were not manufactured domestically as is required by the Buy American Act and concealed the true origin of the parts—Turkey. Maven and Robinson also concealed that its parts were not manufactured in compliance with other material contractual specifications.

175.    As a result, Maven, Dawson, and Robinson overcharged the Government by charging the full price for goods that materially failed contract specifications and concealed that

they had in their possession Government overpayments to which they were not entitled under the terms and conditions of the contract and which they were obligated to repay.

176.   By virtue of the Defendants' failure to disclose their obligation to repay the Government in violation of current 31 U.S.C. § 3729(a)(1)(G), the United States has suffered substantial monetary damages.

### Count IV: Conspiracy under 31 U.S.C. § 3729(a)(1)(C) to Violate 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), and (a)(1)(C)

177.   Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

178.   Defendants Maven, Kavita Dawson, and Robinson, along with Faymer and other unknown Turkish manufacturers and suppliers, (collectively, "Conspirators") entered into an unlawful agreement to violate 31 U.S.C. § 3729(a)(1)(C) to Violate 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), and (a)(1)(C).

179.   The Conspirators agreed to (1) import Turkish parts to fulfill DoD supply contracts; (2) to deliver these Turkish parts to the Government for acceptance even though the parties knew the parts had not been property tested and did not meet the contractual specifications because the parts had dimensional problems, material problems, or other quality defects; (3) that Robinson would furnish "sham" certifications created by Faymer and other unknown Turkish suppliers to the Government so that the Government would accept the products without testing; and (4) agreed to utilize Robinson as a "sham" manufacturer-subcontractor to falsely represent that the Turkish parts were compliant with the Buy American Act and to disguise the true origin of the parts. The Conspirators agreed to present or cause to be presented false claims, and agreed to create or use false statements and false records to the Government in order to obtain Government acceptance of the parts at issue and obtain payments

from the Government under Maven's DoD supply contracts, as well as to conceal Defendants' possession of wrongfully gained government funds.

180.    Defendants committed several acts in furtherance of this scheme. Maven, Kavita Dawson and Robinson imported Turkish parts from Faymer and other unknown Turkish suppliers. Faymer and other unknown Turkish suppliers exported parts to the United States and created "sham certifications" containing false representations about the specifications and quality of the parts. Maven directed Robinson to furnish false Turkish certifications to Government inspectors, and Robinson obeyed. Robinson furnished parts to the Government that were not inspected and that did not meet contractual specifications. Maven and Robinson included the false statements and records, as described above, in the Material Inspection and Receiving Report, Buy American Act certificate, and Certificates of Conformance, among other documents. Maven and Robinson sent these false claims, false statements, and false records to the Government.

181.    By virtue of the false and/or fraudulent claims submitted, paid, or approved as a result of the conspiracies to defraud the Government, the United States has suffered substantial monetary damages.

## X.    RELIEF

182.    On behalf of the United States, Relator seeks to recovery monetary damages equal to three times that suffered by the United Sates. In addition, Relator seeks civil penalties against Defendants equal to the maximum amount authorized by the False Claims Act for each violation of 31 U.S.C. § 3729.

183.    Relator seeks an award in the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act.

184.    Relator seeks to be awarded all costs and expenses for this action, including attorney's fees and court costs.

185.    Relator seeks pre-judgement interest at the highest rate allowed by law.

186.    Relator seeks all other relief on behalf of Relator and the United States that the Court deems just and proper.

## XI.    PRAYER

187.    WHEREFORE, Relator prays that this Court enters a judgment for Relators and against Defendants for the following:

- Damages in the amount of three (3) times the actual damages suffered by the United States as a result of Defendants' conduct;

- Civil penalties against Defendants up to the maximum allowed by law for each violation of 31 U.S.C. § 3729;

- The maximum award Relator may recover pursuant to 31 U.S.C. § 3730(d);

- All costs and expenses of this action, including attorney's fees and costs of court;

- Pre-judgment interest at the highest rate allowed by law; and

all other relief on behalf of Relators and the United States to which each may be entitled to and that the Court deems to be just and proper.

## XII.    DEMAND FOR JURY TRIAL

188.    Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury.

## XIII.    EXHIBITS

189.    Relator submits the following exhibits, which Relator cites to in his Original Complaint, which he hereby incorporates by reference, and which are also appended to this Original Complaint:

| Exhibit | Description | Bates Number |
|---------|-------------|--------------|
| A | List of Maven's contracts with Government/DLA. | CAV00001-CAV00012 |
| B | Maven Contract No. SPEA47-12-D-5048. | CAV00013-CAV00030 |
| C | Letter from Kavita Dawson to Cavic dated March 13, 2014. | CAV00031-CAV00032 |

Respectfully submitted,

**BERG & ANDROPHY**

Joel M. Androphy (admission pending)
Texas Bar No. 01254700
Sarah M. Frazier
Texas Bar No. 24027320
3704 Travis Street
Houston, Texas 77002
Telephone (713) 529-5622
Facsimile (713) 529-3785

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2018, a true and correct copy of this Original Complaint was forwarded to the United States Attorney's Offices for the Central District of Illinois and the Department of Justice in Washington, D.C. via certified mail, return receipt requested.

Sarah M. Frazier